B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Carolyn A. Dye, Chapter 7 Trustee for the Estate of MyLife.com, Inc, | **DEFENDANTS**<br>Jeffrey Tinsley |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Dumas & Kim, APC., 915 Wilshire Blvd,., Ste. 990, Los Angeles, CA 90017 Tel: 213/368-5000 | **ATTORNEYS** (If Known)<br>Paul Alan Beck, Esq. 13701 Riverside Dr Ste 202, Sherman Oaks, CA 91423 Tel: 818-501-1141 |
| **PARTY** (Check One Box Only)<br>□ Debtor  □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor  □ Other<br>☑ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor  □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor  ☑ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to (1) AVOID AND RECOVER FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 544(b) ; AVOID AND RECOVER PREFERENTIAL FRAUDULENT TRANSFERS UNDER 11 U.S.C. §547); BREACH OF FIDUCIARY DUTY; and PRESERVATION OF TRANSFERS FOR THE BENEFIT OF THE ESTATE UNDER 11 U.S.C §550; and BREACH OF FIDUCIARY DUTY

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
☑ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
☑ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $    $300,000 and according to proof |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>MyLife,com, Inc. | BANKRUPTCY CASE NO.<br>2:22-bk-14858-VZ | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Hon. Vincent P. Zurzolo |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>June 13, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Christian T. Kim | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

James A. Dumas, Jr. (SBN 76284)
Christian T. Kim (SBN 231017)
DUMAS & KIM, APC
915 Wilshire Boulevard
Suite 1775
Los Angeles, California 90017
Phone:   213-368-5000
Fax:      213-368-5009

Attorneys for Plaintiff and Chapter 7 Trustee,
Carolyn A. Dye

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MYLIFE.COM, INC.,<br><br>       Debtor. | Case No.: 2:22-bk-14858-VZ<br><br>[Chapter 7]<br><br>[Honorable Vincent P. Zurzolo]<br><br>Adversary No.: |
| CAROLYN A. DYE, Chapter 7 Trustee for the Estate of Mylife.com, Inc.,<br><br>       Plaintiff,<br><br>     vs.<br><br>JEFFREY TINSLEY, an individual,<br><br>       Defendant. | **COMPLAINT TO (1) AVOID AND RECOVER FRAUDULENT TRANSFERS; (2) AVOID AND RECOVER PREFERENTIAL TRANSFERS; (3) BREACH OF FIDUCIARY DUTY; (4) PRESERVATION OF TRANSFERS FOR THE BENEFIT OF THE ESTATE; (5) BREACH OF FIDUCIARY DUTY** |

COMES NOW, Plaintiff, Carolyn A. Dye, ("Trustee" or "Plaintiff") the Chapter 7 trustee of the estate of MyLife.com, Inc., as and for her complaint herein, complains and alleges as follows:

///

///

**I.**

**THE PARTIES AND JURISDICTION**

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and this is a core proceeding under 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), 157(b)(2)(H).  In the event this proceeding is determined to include non-core claims for relief, the Plaintiff consents to the entry of a final order or judgment by the Bankruptcy Court as to any such claims.  Venue in the Central District of California, Los Angeles Division (the "Bankruptcy Court"), is proper pursuant to 28 U.S.C. § 1409 in that this adversary proceeding is related to the bankruptcy case of In re: MyLife.com, Inc., bearing case number 2:22-bk-14858-VZ, presently pending under Chapter 11 of Title 11 of the United States Code in the Bankruptcy Court. ("Bankruptcy Case") This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 because this is a civil proceeding arising in and/or related to the debtor, MyLife.com, Inc.'s, Chapter 7 case.

2.      Plaintiff, Carolyn A. Dye is the duly appointed and acting Chapter 7 bankruptcy trustee for the estate of MyLife.com, Inc. ("Debtor")

3.      Plaintiff is informed and believes and thereon alleges that Defendant, Jeffrey Tinsley, ("Defendant") is an individual residing in the Central District of California, and subject to the jurisdiction of the Bankruptcy Court.

4.      The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court on September 2, 2022. (the "Petition Date")

5.      The Bankruptcy Case was converted to a Chapter 7 proceeding on February 9, 2024.

6.      The Trustee was appointed soon thereafter on February 13, 2024.

**II.**

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

7.      Plaintiff refers to the allegations set forth in paragraph 1 through 6 hereof and incorporates said allegations herein as if fully set forth hereat.

8.      On July 27, 2020, the United States of America through the Department of Justice ("USA") filed a complaint in the United States District Court for the Central District of California to

1  commence the case styled, United States of America v. MyLife.com, Inc., Jeffrey Tinsley (Case NO.

2  20-cv-6692) ("USDC Case") The complaint in the USDC case sought a permanent injunction,

3  equitable relief and civil penalties against the Debtor and Defendant for alleged violations of various

4  consumer protection laws.

5       9.    Plaintiff is informed and believes and thereon alleges that not long after the USA

6  commenced the USDC Case, the Defendant caused the preparation of an "Indemnification

7  Agreement" on or about December 18, 2020 (the "Indemnification Agreement") to shield himself

8  from personal liability that could result from the USDC Case.    The Indemnification Agreement made

9  no mention of the USDC Case, but included terms which provided that the Debtor would indemnify

10  and hold harmless Defendant for any past, present or future litigation related to Defendant's position

11  and duties as an officer of the Debtor.    The Indemnification Agreement is signed by Chief Financial

12  Officer, Anthony Mazzarella, ("CFO"), but Plaintiff is informed and believes and thereon alleges that

13  the Indemnification Agreement was prepared at the direction of the Defendant.    (A true and correct

14  copy of the Indemnification Agreement is attached hereto **Exhibit "A"** and incorporated herein by

15  reference.)

16       10.    Plaintiff is informed and believes and thereon alleges that shortly after the execution

17  of the Indemnification Agreement, the Defendant caused, effectuated, and authorized the approval of

18  the Indemnification Agreement by the Debtor's Board of Directors.    Plaintiff is informed and

19  believes and thereon alleges that the Board of Directors of the Debtor consisted of the Defendant and

20  an individual named Sean Whiteley.    Plaintiff is informed and believes and thereon alleges that Mr.

21  Whiteley served at the direction of the Defendant and was instructed by the Defendant to approve the

22  Indemnification Agreement, which he did.    Plaintiff is informed and believes and thereon alleges that

23  the Action of Written Consent of the Board of Directors of MyLife.com, Inc. ("Board Resolution")

24  was signed by Mr. Whiteley, but the Defendant abstained from voting.    The Plaintiff is informed and

25  believes and thereon alleges that despite abstaining from the vote to approve the Indemnification

26  Agreement, the Indemnification Agreement was approved based on the direction of the Defendant.

27  (A true and correct copy of the Board Resolution is attached hereto as **Exhibit "B"** and incorporated

28  herein by this reference.)

3

11.     On December 15, 2021, the District Court entered a Stipulated Order for Permanent Injunction and Equitable Monetary Relief ("Stipulated Judgment") against the Debtor and Defendant. The Stipulated Judgment provided for damages in the amount of $5,000,000 against the Defendant. The Stipulated Judgment further provided that a payment of $300,000 was due from the Defendant no later than December 15, 2021, and provided for a payment plan of sixteen separate payments to the USA through December 31, 2025.

12.     Plaintiff is informed and believes and thereon alleges that at the direction of the Defendant, the Debtor transferred $300,000 to the Defendant on or about March 3, 2022. (the "$300K Transfer") Plaintiff is informed and believes and thereon alleges that the Debtor was insolvent at the time of the transfer and the CFO was heavily pressured by the Defendant to complete the $300K Transfer despite the Debtor's insolvent financial condition.  The $300K Transfer was described as an "Indemnification Reimbursement."

13.     Six months later, the Debtor filed for bankruptcy.

## III.

## FIRST CLAIM FOR RELIEF

**(Avoidance of Constructive Fraudulent Transfer under 11 U.S.C. §544(b) and California Civil Code §§ 3439.05 and 3439.07-09)**

14.     Plaintiff refers to the allegations set forth in paragraph 1 through 13 hereof and incorporates said allegations herein as if fully set forth hereat.

15.     Within one year prior to the Petition Date, the Debtor made the $300K Transfer to the Defendant without receiving a reasonably equivalent value in exchange.

16.     The Debtor was insolvent on the date of the $300K Transfer or became insolvent as a result of such transfers.

17.     The Plaintiff is informed and believes that the Defendant, did not take possession of the $300K Transfer in good faith and for a reasonably equivalent value, and took possession thereof with knowledge of the voidability of such transfer.  Therefore, the $300K Transfer is avoidable under Section 544(b) and California Civil Code sections 3439.05 and 3439.07-09.

**IV.**

**SECOND CLAIM FOR RELIEF**

**(Avoidance of Constructive Fraudulent Transfer under 11 U.S.C. §544(b) and California Civil Code §§ 3439.04(a)(2)(B) and 3439.07-09)**

18.     Plaintiff refers to the allegations set forth in paragraph 1 through 13 hereof and incorporates said allegations herein as if fully set forth hereat.

19.     Within one year prior to the Petition Date, the Debtor made the $300K Transfer to the Defendant without receiving a reasonably equivalent value in exchange.

20.     The Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due at the time of the $300K Transfer.

21.     The Plaintiff is informed and believes that the Defendant, did not take possession of the $300K Transfer in good faith and for a reasonably equivalent value, and took possession thereof with knowledge of the voidability of such transfer.  Therefore, the $300K Transfer is avoidable under Section 544(b) and California Civil Code sections 3439.04(a)(2)(A) and 3439.07-09.

**V.**

**THIRD CLAIM FOR RELIEF**

**(Avoidance of Actual Fraudulent Transfer under 11 U.S.C. §544(b) and California Civil Code §§ 3439.04(a)(1) and 3439.07-09)**

22.     Plaintiff refers to the allegations set forth in paragraph 1 through 13 hereof and incorporates said allegations herein as if fully set forth hereat.

23.     Within one year prior to the Petition Date, the Debtor made the $300K Transfer to the Defendant with the actual intent to hinder, delay or defraud the Debtor's creditors.

24.     The Plaintiff is informed and believes that the Defendant did not take possession of the $300K Transfer in good faith and for a reasonably equivalent value, and took possession thereof with knowledge of the voidability of such transfer.  Therefore, the $300K Transfer is avoidable under Section 544(b) and California Civil Code sections 3439.04(a)(1) and 3439.07-09.

## VI.

### FOURTH CLAIM FOR RELIEF

### (Avoidance of Preferential Transfer Under 11 U.S.C. §547)

25.     Plaintiff refers to the allegations set forth in paragraph 1 through 13 hereof and incorporates said allegations herein as if fully set forth hereat.

26.     The $300K Transfer was to or for the benefit of Defendant within the meaning of 11 U.S.C. §547(b)(1) because the $300K Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor pursuant to the Indemnification Agreement.

27.     As an officer of the Debtor, the Defendant is an insider as defined in 11 U.S.C. §101(31).

28.     The $300K Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to the Defendant before the $300K Transfer was made.

29.     The $300K Transfer was made from the Debtor's bank account.

30.     The $300K Transfer was made while the Debtor was insolvent.

31.     The $300K Transfer was made on or within one year before the Petition Date.

32.     As a result of the $300K Transfer, Defendant received more than he would have received if the $300K Transfer had not been made.

33.     As a consequence, the $300K Transfer is avoidable under 11 U.S.C. §547(b).

## VII.

### FIFTH CLAIM FOR RELIEF

### (Recovery of Avoided Transfer or Value Thereof Under 11 U.S.C. §550)

34.     Plaintiff refers to the allegations set forth in paragraph 1 through 33 hereof and incorporates said allegations herein as if fully set forth hereat.

35.     Plaintiff is entitled to not only avoid the $300K Transfer, but also to recover the value thereof under Section 550(a) for the benefit of the estate from the Transferee Defendants.

# VIII.

## SIXTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

36.    Plaintiff refers to the allegations set forth in paragraph 1 through 35 hereof and incorporates said allegations herein as if fully set forth hereat.

37.    The powers of a fiduciary, when determined by the Bankruptcy Court, should be determined pursuant to California law.

38.    At all times relevant herein, Defendant was a director and officer of Debtor or had control of the Debtor.

39.    When the Defendant intentionally caused and directed the creation of the Indemnification Agreement, the Defendant was acting in a fiduciary capacity, and a fiduciary relationship existed between the Debtor and the Defendant.

40.    Plaintiff is informed and believes and thereon alleges that, Defendant caused the creation of the Indemnification Agreement knowing that the Debtor was insolvent and would be unable to pay its debts as they became due, including paying for the Debtor's operating expenses.

41.    When Defendant intentionally caused and directed the creation of the Indemnification Agreement and ordered the $300K Transfer, the Defendant did so with the intent of committing fraud while acting in a fiduciary capacity and relationship to the Debtor.

42.    As a result of the Defendant intentionally causing and directing the creation of the Indemnification Agreement and ordering the $300K Transfer, the Debtor was harmed.

43.    Defendant's willful and fraudulent acts justify awarding punitive damages against him in an amount to be determined at trial.

44.    As a direct and proximate result of the foregoing, a judgment should be entered against the Defendant and in favor of Plaintiff in an amount to be determined at trial, including punitive damages along with any further sums as may be determined at the time of trial.

# IX.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment as follows:

**ON THE FIRST CLAIM FOR RELIEF:**

1.  For a judgment avoiding the $300K Transfer and recovering $300K Transfer plus interest for the benefit of the estate;

**ON THE SECOND CLAIM FOR RELIEF:**

2.  For a judgment avoiding the $300K Transfer and recovering $300K Transfer plus interest for the benefit of the estate;

**ON THIRD CLAIM FOR RELIEF**

3.  For a judgment avoiding the $300K Transfer and recovering $300K Transfer plus interest for the benefit of the estate;

**ON FOURTH CLAIM FOR RELIEF**

4.  For a judgment avoiding the $300K Transfer and recovering $300K Transfer plus interest for the benefit of the estate;

**ON FIFTH CLAIM FOR RELIEF**

5.  For a judgment recovering the $300K Transfer plus interest for the benefit of the estate;

**ON SIXTH CLAIM FOR RELIEF**

6.  For a judgment against the Defendant in an amount to be determined at trial.

**ALL CLAIMS FOR RELIEF**

7.  For prejudgment interest;

8.  For costs of suit; and

9.  For such other relief as the Court deems just and proper.

Dated: June 13, 2024                            DUMAS & KIM, APC

                                                By: */s/ Christian T. Kim*
                                                    Christian T. Kim,
                                                    Attorneys for Plaintiff and Chapter 7 Trustee,
                                                    Carolyn A. Dye

# EXHIBIT "A"

# EXHIBIT "A"

## MYLIFE.COM, INC.

### INDEMNIFICATION AGREEMENT – JEFFREY TINSLEY

This Indemnification Agreement (this "Agreement") is entered into as of December 18, 2020, by and between MyLife.com, Inc., a Delaware corporation (the "Company"), and Jeffrey Tinsley (the "Officer").

## RECITALS

A.      The Company and Officer recognize the continued difficulty in obtaining liability insurance for corporate directors and officers, the significant increases in the cost of such insurance and the general reductions in the coverage of such insurance.

B.      The Company and Officer further recognize the substantial increase in corporate litigation in general, subjecting directors to expensive litigation risks at the same time as the availability and coverage of liability insurance has been severely limited.

C.      The protection currently available to directors and officers of the Company may not be adequate under the present circumstances, and individuals, including the Officer, may not be willing to continue to serve or be associated with the Company in such capacities without additional protection for themselves.

D.      The Company (i) desires to attract and retain the involvement of highly qualified persons, such as Officer, to serve and be associated with the Company, and (ii) accordingly, wishes to provide for the indemnification and advancement of expenses to the Officer as provided herein.

E.      The Company had a prior indemnification agreement with Officer, and seeks to update novate that agreement with this Agreement.

## AGREEMENT

NOW, THEREFORE, the Company and the Officer hereby agree as follows:

1.      Indemnification.

(a)      Indemnification of Expenses.  The Company shall indemnify and hold harmless the Officer to the fullest extent permitted by law if Officer was, is or in the future becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, investigation, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation that such Officer in good faith believes might lead to the institution of any such action, suit, investigation, proceeding or alternative dispute resolution mechanism, whether civil, criminal, administrative, investigative or other (hereinafter referred to collectively as a "Claim") by reason of (or arising in whole or in part out of) any

1

event or occurrence related to the fact that Officer is or was (or is alleged to be or to have been) an officer, employee, controlling person, fiduciary or other agent or affiliate of the Company, or any subsidiary of the Company, or is or was (or .is alleged to be or to have been) serving at the request of the Company as a director, officer, employee, fiduciary or other agent or affiliate of another corporation, partnership, joint venture, trust or other enterprise, or by reason of any action or inaction on the part of such Officer while serving or acting (or allegedly serving or acting) in such capacity, including, without limitation, any such Claim under the Securities Act of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Fair Credit Reporting Act, or any other federal or state statutory law or regulation, or any such Claim, at common law or otherwise, that relates directly or indirectly (i) to the registration, purchase, sale or ownership of any securities of the Company or (ii) the operations of the Company, herein referred to collectively as an "Indemnification Event"), from and against any and all losses, claims, damages, expenses and liabilities, joint or several, incurred in connection with such Claim (including any investigation, legal and other expenses incurred in connection with, and any amount paid in settlement of (if such settlement is approved in advance by the Company, which approval shall not be unreasonably withheld) any such Claim) and against any and all expenses (including reasonable attorneys' fees, arbitration expenses, arbitrator fees, and all other costs, expenses and obligations incurred in connection with investigating, defending a witness in or participating in (including on appeal), or preparing to defend, be a witness in or participate in, any action, suit, proceeding, alternative dispute resolution mechanism, hearing, inquiry or investigation related to such Claim), judgments, fines, penalties and amounts paid in settlement (if such settlement is approved in advance by the Company, which approval shall not be unreasonably withheld) of such Claim and any federal, state, local or foreign taxes imposed on Officer (collectively, hereinafter "Expenses"), including all interest, assessments and other charges paid or payable in connection with or in respect of such Expenses, in each case so long as the Officer acted in good faith and in a manner the Officer reasonably believed to be in or not opposed to the best interests of the Company, and with respect to any criminal proceeding, had no reasonable cause to believe the Officer's conduct was unlawful (such standard of conduct, the "Applicable Standard"). The Company shall make such payment of Expenses as soon as practicable but in any event no later than thirty (30) days after written demand by the Officer therefor is presented to the Company.

(b)    Reviewing Party. Notwithstanding the foregoing, (i) the obligations of the Company under Section l(a) shall be subject to the condition that the Reviewing Party (as defined in Section 9(e) hereof) shall not have determined (in a written opinion, in any case in which the Independent Legal Counsel referred to in Section 10(d) hereof is involved) that Officer would not be permitted to be indemnified under applicable law, and (ii) the obligation of the Company to make an advance payment of Expenses to Officer pursuant to Section 2(a) (an "Expense Advance") shall be subject to the condition that, if, when and to the extent that the Reviewing Party determines that Officer would not be permitted to be so indemnified under applicable law, the Company shall be entitled to be reimbursed by Officer (who hereby agrees to reimburse the Company) for all such amounts theretofore paid; provided, however, notwithstanding the foregoing, if in connection with any Claim Officer has commenced or thereafter commences legal proceedings in a court or tribunal of competent jurisdiction to secure a determination that Officer should be indemnified under applicable law or hereunder, any determination made by the Reviewing Party that Officer would not be permitted to be

2

indemnified under applicable law or hereunder shall not be binding and Officer shall not be required to reimburse the Company for any Expense Advance until a final judicial determination is made that Officer would not be permitted to be indemnified under applicable law or hereunder (as to which all rights of appeal therefrom have been exhausted or lapsed). Officer's obligation to reimburse the Company for any Expense Advance shall be unsecured and no interest shall be charged thereon. If there has not been a Change in Control (as defined in Section 9(c) hereof), the Reviewing Party shall be selected by the Board of Directors in good faith, and if there has been a Change in Control (other than a Change in Control following which a majority of the Board of Directors of the Company (or the ultimate parent entity thereof) is comprised of directors who were directors of the Company immediately prior to the Change in Control), the Reviewing Party shall be the Independent Legal Counsel referred to in Section 9(d) hereof. (If the Reviewing Party is the Independent Legal Counsel, such counsel, among other things, shall render its written opinion to the Company and Officer as to whether and to what extent Officer is permitted to be indemnified under applicable law. The Company agrees to pay the reasonable fees of the Independent Legal Counsel referred to above and to fully indemnify such counsel against any and all expenses (including reasonable attorneys' fees), claims, liabilities and damages arising out of or relating to this Agreement or its engagement pursuant hereto.) If there has been no determination by the Reviewing Party or if the Reviewing Party determines that Officer would not be permitted to be indemnified in whole or in part under applicable law, Officer shall have the right to commence litigation seeking an initial determination by a court or tribunal, or challenging any such determination by the Reviewing Party or any aspect thereof, including the legal or factual bases therefor, and the Company hereby consents to service of process and to appear in any such proceeding. Any determination by the Reviewing Party otherwise shall be conclusive and binding on the Company and Officer.

(c)    Contribution. If the indemnification provided for in Section l(a) above for any reason is held by a court or tribunal of competent jurisdiction to be unavailable to an Officer in respect of any Claims referred to therein, then the Company, in lieu of indemnifying such Officer thereunder, shall contribute to (or reimburse Officer for) the amount paid or payable by such Officer as a result of such losses, claims, damages, expenses or liabilities (i) in such proportion as is appropriate to reflect the relative benefits received by the Company and the Officer in connection with the transaction or matter to which the indemnification relates (ii) if the allocation provided by clause (i) above is not permitted by applicable law or otherwise is not applicable or cannot be calculated, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Company and the Officer in connection with the action or inaction which resulted in such losses, claims, damages, expenses or liabilities, as well as any other relevant equitable considerations. The Company and Officer agree that it would not be just and equitable if contribution pursuant to this Section 1(c) were determined by pro rata or per capita allocation or by any other method of allocation which does not take account of the equitable considerations referred to in the immediately preceding paragraph.

(d)    Survival Regardless of Investigation. The indemnification and

3

contribution provided for in this Section 1 will remain in full force and effect regardless of any investigation made by or on behalf of Officer or Officer, director, employee, agent · or controlling person of the Officers.

(e)    Mandatory Payment of Expenses.  Notwithstanding any other provision of this Agreement, to the extent that an Officer has been successful on the merits or otherwise, including, without limitation, the dismissal of an action without prejudice, in the defense of any action, suit, investigation, proceeding, inquiry or investigation referred to in Section (l)(a) hereof or in the defense of any claim, issue or matter therein, such Officer shall be indemnified against all Expenses incurred by such Officer in connection therewith.

2.    Expenses: Indemnification Procedure.

(a)    Advancement of Expenses.  The Company shall advance all Expenses incurred by Officer. The advances to be made hereunder shall be paid by the Company to the Officer as soon as practicable but in any event no later than thirty (30) days after written demand by such Officer therefor to the Company, which written demand shall include reasonable detail and support for the amount of the Expenses to be so advanced.

(b)    Notice/Cooperation by Officers.  Officer shall, as a condition precedent to Officer's right to be indemnified under this Agreement, give the Company notice in writing as soon as practicable of any Claim made against Officer for which indemnification will  or could be sought  under this Agreement.  In addition, Officer shall give the Company such information and cooperation as it may reasonably require and as shall be within Officer's power.

(c)    No Presumptions; Burden of Proof. For purposes of this Agreement, the termination of any Claim by judgment, order, settlement (whether with or without court approval) or conviction, or upon a plea of nolo contendere, or its equivalent, shall not create a presumption that Officer did not meet any particular standard of conduct or have any particular belief or that a court has determined that indemnification is not permitted by applicable law. In addition, neither the failure of the Reviewing Party to have made a determination as to whether Officer has met any particular standard of conduct or had any particular belief, nor an actual determination by the Reviewing Party that the Officer has not met such standard of conduct or did not have such belief, prior to the commencement of legal proceedings by Officer to secure a judicial determination that Officer should be indemnified hereunder or under applicable law, shall be a defense to Officer's claim for indemnification hereunder or create a presumption that the Officer has not met any particular standard of conduct or did not have any particular belief. In connection with any determination by the Reviewing Party or otherwise as to whether Officer is entitled to be indemnified hereunder, the burden of proof shall be on the Company to establish that the Officer is not so entitled.

(d)    Notice to Insurers. If, at the time of the receipt by the Company of a notice of a Claim pursuant to Section 2(b) hereof, the Company has liability insurance in effect which may cover such Claim, the Company shall give prompt notice of the commencement of such Claim to the insurers in accordance with the procedures set forth in

the respective policies. If the Company has not paid such amounts directly, the Company shall thereafter take all necessary or desirable action to cause such insurers to pay, on behalf of Officer, all amounts payable as a result of such Claim in accordance with the terms of such policies.

(e)     Selection of Counsel. In the event the Company shall be obligated hereunder to pay the Expenses of any Claim, the Company shall be entitled to assume the defense of such Claim, with counsel approved by the applicable Officer, which approval shall not be unreasonably withheld, upon the delivery to such Officer of written notice of its election to do so. After delivery of such notice, approval of such counsel by Officer and the retention of such counsel by the Company, the Company will not be liable to Officer under this Agreement for any fees of counsel subsequently incurred by such Officer with respect to the same Claim; provided that, (i) Officer shall have the right to employ such Officer's counsel in any such Claim at Officer's expense and (ii) if (A) the employment of counsel by Officer has been previously authorized by the Company, (B) Officer shall have reasonably concluded that there is an actual conflict of interest, or a potential conflict of interest that is material and reasonably likely, between the Company and Officer in the conduct of any such defense, or (C) the Company shall not continue to retain such counsel to defend such Claim, then the Company shall be liable to Officer for the fees and expenses of Officer's counsel. As long as the Company has otherwise complied with the terms hereof, the Company shall have the right to conduct such defense as it sees fit in its sole discretion, including the right to settle any claim, action or proceeding against Officer without the consent of such Officer, provided such settlement includes a full release of Officer by the claimant from all liabilities or potential liabilities under such claim and does not otherwise impose any obligation (financial or otherwise) on Officer.

3.     Additional Indemnification Rights; Nonexclusivity.

(a)     Scope. The Company hereby agrees to indemnify Officer to the fullest extent permitted by law and in accordance with the terms hereof (subject to Officer's compliance with the Applicable Standard), notwithstanding that such indemnification may not be specifically authorized by the Company's Certificate of Incorporation, the Company's Bylaws or by statute. In the event of any change after the date of this Agreement in any applicable law, statute or rule which expands the right of a Delaware corporation to indemnify an officer, employee, agent or fiduciary, it is the intent of the parties hereto that Officer shall enjoy by this Agreement the greater benefits afforded by such change. In the event of any change in any applicable law, statute or rule which narrows the right of a Delaware corporation to indemnify an officer, employee, agent or fiduciary, such change, to the extent not otherwise required by such law, statute or rule to be applied to this Agreement, shall have no effect on this Agreement or the parties' rights and obligations hereunder.

(b)     Nonexclusivity. The indemnification provided by this Agreement shall be in addition to and not in limitation of any rights to which Officer may be entitled under the Company's Certificate of Incorporation, its Bylaws, any agreement, any vote of stockholders or disinterested directors, the Delaware General Corporation Law, or otherwise. The indemnification provided under this Agreement shall continue as to Officer for any action that

Officer took or did not take while serving in an indemnified capacity even though Officer may have ceased to serve in such capacity.

4.    No Duplication of Payments. The Company shall not be liable under this Agreement to make any payment in connection with any Claim made against Officer to the extent such Officer has otherwise actually received payment (under any insurance policy, Certificate of Incorporation, the Bylaws or otherwise) of the amounts otherwise indemnifiable hereunder.

5.    Partial Indemnification. If Officer is entitled under any provision of this Agreement to indemnification by the Company for any portion of Expenses incurred in connection with any Claim, but not, however, for all of the total amount thereof, the Company shall nevertheless indemnify Officer for the portion of such Expenses to which Officer is entitled.

6.    Mutual Acknowledgment. The Company and Officer acknowledge that in certain instances, Federal law or applicable public policy may prohibit the Company from indemnifying its directors, officers, controlling persons, fiduciaries or other agents or affiliates. Officer understands, acknowledges and agrees that the Company may be required in the future to submit the question of indemnification to a court in certain circumstances for a determination of the Company's obligation to indemnify the Officers in light of public policy, notwithstanding any provision hereof to the contrary.

7.    Liability Insurance. To the extent the Company maintains liability insurance applicable to directors, officers, employees, control persons, fiduciaries or other agents and affiliates, Officer shall be covered by such policies in such a manner as to provide to Officer the same rights and benefits as are accorded to the most favorably insured of the Company's officers.

8.    Exceptions. Any other provision herein to the contrary notwithstanding, the Company shall not be obligated pursuant to the terms of this Agreement:

(a)    Claims Initiated by Officer.  To indemnify or advance expenses to Officer with respect to Claims initiated or brought voluntarily by such Officer and not by way of defense, except (i) with respect to actions or proceedings to establish or enforce a right to indemnity under this Agreement, applicable law or any other agreement or insurance policy or under the Company's Certificate of Incorporation or Bylaws now or hereafter in effect relating to Claims for Indemnification Events, (ii) in specific cases if the Board of Directors has approved the initiation or bringing of such Claim, or (iii) as otherwise required under the Delaware General Corporation Law, regardless of whether Officer ultimately is determined to be entitled to such indemnification, advance expense payment or insurance recovery, as the case may be;

(b)    Lack of Good Faith. To indemnify Officer for any expenses incurred by such Officer with respect to any proceeding instituted by Officer to enforce or interpret this Agreement, if a court of competent jurisdiction determines that each of the material

6

assertions made by the Officer in such proceeding was not made in good faith or was frivolous; or

(c)    Insured Claims. To indemnify or advance expenses to Officer with respect to Claims for which payment has actually been made to or on behalf of Officer under any insurance policy or other indemnity provision, except with respect to any excess beyond the amount paid under any insurance policy or other indemnity provision;

9.    Construction of Certain Phrases.

(a)    For purposes of this Agreement, references to the "Company" shall include MyLife.com, Inc. and any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, employees, agents, fiduciaries, so that if Officer is or was a director, officer, employee, agent, control person, fiduciary of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee, control person, agent or fiduciary of another corporation, partnership, joint venture, employee benefit plan, trust or other enterprise, such Officer shall stand in the same position under the provisions of this Agreement with respect to the resulting or surviving corporation as such Officer would have with respect to such constituent corporation if its separate existence had continued.

(b)    For purposes of this Agreement, references to "other enterprises" shall include employee benefit plans; references to "fines" shall include any excise taxes assessed on Officer with respect to an employee benefit plan; and references to "serving at the request of the Company" shall include any service as a director, officer, employee, agent or fiduciary of the Company which imposes duties on, or involves services by, such director, officer, employee, agent, fiduciary with respect to an employee benefit plan, its participants or its beneficiaries; and if Officer acted in good faith and in a manner that Officer reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan, then Officer shall be deemed to have acted in a manner "not opposed to the best interests of the Company" as referred to in this Agreement.

(c)    For purposes of this Agreement a "Change in Control" shall be deemed to have occurred if after the date of this Agreement (i) any "person" (as such term in used in Sections 13(d) and 14(d) of the Exchange Act), other than Jeffrey Tinsley his affiliates or immediate family members or a trustee or other fiduciary holding securities under an employee benefit plan of the Company or a corporation owned directly or indirectly by the stockholders of the Company in substantially the same proportions as their ownership of stock of the Company, is or becomes the "beneficial owner" (as defined in Rule 13d-3 under the Exchange Act), directly or indirectly, of securities of the Company representing more than 50% of the total voting power represented by the Company's then outstanding Voting Securities, (ii) during any period of two consecutive years, individuals who at the beginning of such period constitute the Board of Directors of the Company and any new director whose election by the Board of Directors or nomination for election by the Company's stockholders was approved by a vote of at least two-thirds of the directors then still in office who either

7

were directors at the beginning of the period or whose election or nomination for election was previously so approved, cease for any reason to constitute a majority of the Board of Directors of the Company, or (iii) the stockholders of the Company approve a merger or consolidation of the Company with any other corporation, other than a merger or consolidation which would result in the Voting Securities of the Company outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into Voting Securities of the surviving entity) at least 50% of the total voting power represented by the Voting Securities of the Company or such surviving entity outstanding immediately after such merger or consolidation, or the stockholders of the Company approve a plan of complete liquidation of the Company or an agreement for the sale or disposition by the Company of (in one transaction or a series of transactions) all or substantially all of the Company's assets.

(d)    For purposes of this Agreement, "Independent Legal Counsel" shall mean an attorney or firm of attorneys, selected in accordance with the provisions of Section 1(b) hereof, who shall be experienced in matters of corporate law not have otherwise performed services for the Company or Officer within the last three years (other than with respect to matters concerning the right of Officer under this Agreement, or of other Officers under similar indemnity agreements). Notwithstanding the foregoing, "Independent Legal Counsel" shall not include any person who, under the applicable standards of professional conduct then prevailing, would have a conflict of interest in representing either the Company or Officer in an action to determine Officer's rights under this Agreement.

(e)    For purposes of this Agreement, a "Reviewing Party" shall mean any appropriate person or body consisting of a member or members of the Company's Board of Directors or any other person or body appointed by the Board of Directors who is not a party to the particular Claim for which an Officer is seeking indemnification, or Independent Legal Counsel.

(f)    For purposes of this Agreement, "Voting Securities" shall mean any securities of the Company that vote generally in the election of directors.

10.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall constitute an original.

11.    Binding Effect; Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors, assigns, including any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business and/or assets of the Company (and the Company may assign its rights and obligations under this Agreement in connection with any such transaction without the consent of Officer), spouses, heirs, and personal and legal representatives. This Agreement shall continue in effect with respect to Claims relating to Indemnification Events regardless of whether Officer continues to serve as a director, officer, employee, agent, controlling person, or fiduciary of the Company or of any other enterprise at the Company's request.

12.    Attorneys' Fees. In the event that any action is instituted by Officer to enforce or interpret any of the terms of this Agreement, or of any Company's insurance policies, Officer shall be entitled to be paid all expenses (including reasonable attorneys' fees and all other costs, expenses and obligations incurred in connection with investigating, defending a witness in or participating in (including on appeal), or preparing to defend, be a witness in or participate in, any such action) incurred by Officer with respect to such action, regardless of whether Officer is ultimately successful in such action, unless, as part of such action, a court of competent jurisdiction determines that each of the material assertions made by Officer as a basis for such action were not made in good faith or were frivolous. In connection with such action, Officer shall be entitled to the advancement of expenses (including reasonable attorneys' fees, arbitration fees, arbitrator fees, and all other costs, expenses and obligations incurred in connection with investigating, defending a witness in or participating in (including on appeal), or preparing to defend, be a witness in or participate in, any such action) with respect to such action, unless, as a part of such action, a court or tribunal of competent jurisdiction over such action determines that each of the material assertions made by such Officer as a basis for such action was not made in good faith or was frivolous. In the event of an action instituted by Officer by or in the name of the Company under this Agreement to enforce or interpret any of the terms of this Agreement, Officer shall be entitled to be reimbursed by the Company for all expenses (including reasonable attorneys' fees and all other costs, expenses and obligations incurred in connection investigating, defending a witness in or participating in (including on appeal), or preparing to defend; be a witness in or participate in, any such action) incurred by Officer in connection with such action (including costs and expenses incurred with respect to any counterclaims and cross-claims made by Officer in such action), unless, as part of such action, a court of competent jurisdiction determines that each of the material assertions made by Officer as a basis for such action were not made in good faith or were frivolous.

13.    Notice. All notices and other communications required or permitted hereunder shall be in writing and shall be effective upon the earlier of receipt or (a) five (5) days after deposit with the U.S. Postal Service or other applicable postal service, if delivered by first class mail, postage prepaid, (b) upon delivery, if delivered by hand, (c) one business day after the business day of deposit with Federal Express or similar overnight courier, freight prepaid, or (d) one business day after the day of delivery by facsimile transmission, if deliverable by facsimile transmission, with copy by first class mail, postage prepaid, and shall be addressed if to Officer at the Officer's address as set forth beneath the Officer's signature to this Agreement, and if to the Company at the address of its principal corporate offices (attention: Chief Executive Officer) or at such other address as such party may designate by ten days' advance written notice to the other party hereto.

14.    Consent to Jurisdiction. The Company and the Officer each hereby irrevocably consent to the jurisdiction of the courts of the State of California for all purposes in connection with any action or proceeding which arises out of or relates to this Agreement and agree that any action instituted under this Agreement shall be commenced, prosecuted and continued only in courts located in the City of Los Angeles, California, which shall be the exclusive and only proper forum for adjudicating such a claim.

15. <u>Arbitration.</u> Notwithstanding any other provision in this Agreement, any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in Los Angeles before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures, except that in no event shall the hearing commence later than 90 days following initiation of arbitration. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

16. <u>Severability.</u> The provisions of this Agreement shall be severable in the event that any of the provisions hereof (including any provision within a single section, paragraph or sentence) are held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, and the remaining provisions shall remain enforceable to the fullest extent permitted by law. Furthermore, to the fullest extent possible, the provisions of this Agreement (including, without limitations, each portion of this Agreement containing any provision held to be invalid, void or otherwise unenforceable, that is not itself invalid, void or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

17. <u>Choice of Law.</u> This Agreement shall be governed by and its provisions construed and enforced in accordance with the laws of the State of California, as applied to contracts between California residents, entered into and to be performed entirely within the State of California, without regard to the conflict of laws principles thereof.

18. <u>Subrogation.</u> In the event of payment under this Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of the Officer, who shall execute all documents required and shall do all acts that may be necessary to secure such rights and to enable the Company effectively to bring suit to enforce such rights.

19. <u>Third Party Beneficiaries.</u> There are no third party beneficiaries of this Agreement.

20. <u>Amendment and Termination.</u> No amendment, modification, termination, or cancellation of this Agreement ·shall be effective unless it is in writing signed by the Company and the Officer. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions hereof (whether or not similar) nor shall such waiver constitute a continuing waiver.

21. <u>Integration and Entire Agreement.</u> This Agreement sets forth the entire understanding between the parties hereto and supersedes and merges all previous written and oral negotiations, commitments, understandings and agreements relating to the subject matter hereof between the parties hereto, including; without limitation, any indemnification agreement between the Officer and the Company.

*[Signature Page Follows]*

    **IN WITNESS THEREOF,** the parties hereto have executed this Agreement as of the date first above written.

**COMPANY**

**MYLIFE.COM, INC.,**
a Delaware corporation

By: _____.

    Anthony Mazzarella
    Chief Financial Officer

Address For Notice:
100 Glendon Ave
Suite 720
Los Angeles, CA 90024


**OFFICER**

**JEFFREY TINSLEY**

By: _____.

    Signature
    Jeffrey Tinsley

Address For Notice:

[Signature Page to
Jeffrey Tinsley
Indemnification Agreement]

# EXHIBIT "B"

# EXHIBIT "B"

**ACTION BY WRITTEN CONSENT OF**
**THE BOARD OF DIRECTORS OF**
**MyLife.com, Inc.**

a Delaware corporation

The undersigned, being all of the directors of MyLife.com, Inc., a Delaware corporation (the "Company"), in lieu of a meeting of the Board of the Directors of the Company (the "Board") and pursuant to the authority of Section 141(f) of the Delaware General Corporation Law, hereby consent to, authorize and adopt the following resolutions with the same force and effect as if the undersigned were personally present at a meeting of the Board and had voted for the same:

**A.    APPROVAL OF ENTERING INTO INDEMNIFICATION AGREEEMENT**

**WHEREAS,** the Company desires to enter into, and/or ratify the execution of, that certain MyLife.com, Inc. Indemnification Agreement – Jeffrey Tinsley dated as of December 18, 2020 (the "Contract"); and

**WHEREAS,** entering into and/or ratifying the Contract is advisable and in the best interests of the Company and its stockholders;

**NOW, THEREFORE, BE IT RESOLVED,** that the terms and provisions of the Contract are hereby ratified and approved; and be it further

**RESOLVED,** that the Company be, and it hereby is, authorized, empowered and directed to enter into the Contract.

**B.    GENERAL AUTHORITY**

**RESOLVED,** that all actions, if any, previously taken and documents executed by an Authorized Signatory, or any persons or persons designated and authorized to act by any Authorized Signatory, prior to the adoption of these resolutions in connection with the transactions described above, are hereby ratified, confirmed, approved and adopted in all respects; and be it further

**RESOLVED,** that any Authorized Signatory is authorized, empowered and directed for and on behalf of the Company and in its name or otherwise, (i) to incur such costs and expenses, (ii) to do or cause to be done all such acts or things and (iii) to execute and deliver, or cause to be executed and delivered, all such agreements, documents and instruments as the Authorized Signatory executing the same shall deem necessary, advisable or appropriate to effectuate or carry out the purposes and intent of the foregoing resolutions and to perform the obligations of the Company under the Contract referred to therein, the execution and delivery thereof and the taking of any such action to be deemed conclusive evidence of such approval.

This Unanimous Written Consent may be executed in counterparts and signature pages may be delivered by facsimile, each of which shall be deemed an original and all of which, taken together, shall constitute one and the same instrument, and shall be filed with the minutes of the proceedings of the Board of Directors. This Action By Written Consent shall be effective as of the date first set forth above.

*Abstain*

_____

Jeffrey Tinsley
Director


_____

Sean Whiteley
Director